# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

REBEKAH M.[1],

        Plaintiff,

  v.

**LELAND DUDEK, ACTING COMMISSIONER OF SOCIAL SECURITY**,

        Defendant.

Case No. 6:23-cv-1741-SI

**OPINION AND ORDER**

Katherine L. Eitenmiller and Brent Wells, WELLS, MANNING, EITENMILLER & TAYLOR, PC, 474 Willamette Street, Eugene, OR 97401. Of Attorneys for Plaintiff.

William Narus, Acting United States Attorney, and Kevin C. Danielson, Executive Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; John Drenning, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, Social Security Administration, 6401 Security Boulevard, Baltimore, MD 21235. Of Attorneys for Defendant.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

**Michael H. Simon, District Judge.**

Plaintiff Rebekah M. seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons stated below, the Court reverses the decision of the Commissioner and remands the case for further proceedings.

## STANDARD OF REVIEW

The decision of the administrative law judge ("ALJ") is the final decision of the Commissioner in this case. The district court must affirm the ALJ's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla" and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the ALJ's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the ALJ. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). A reviewing court, however,

may not affirm the ALJ on a ground upon which the ALJ did not rely. *Id.*; *see also Bray*, 554 F.3d at 1225-26.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Act on May 13, 2021, alleging disability beginning on December 31, 2008. Administrative Record ("AR") 252-58. Plaintiff also filed an application for SSI on May 13, 2021, again alleging disability beginning on December 31, 2008. AR 259-68. The agency denied her claims both initially and upon reconsideration. *See* AR 161-65, 172-179. Plaintiff requested a hearing before an ALJ. AR 180-81. Plaintiff's written request for a hearing amended the alleged onset date to May 13, 2021, effectively withdrawing her application for DIB. *See* AR 286. Plaintiff acknowledged that she withdrew her DIB claim at the hearing. AR 41.

Plaintiff's date of birth is January 6, 1972, and she was 49 years old as of the amended alleged disability onset date. AR 93. Plaintiff appeared for a telephone hearing before an ALJ in October 2022. AR 36-37. On November 2, 2022, the ALJ issued a decision denying Plaintiff's claim for benefits. AR 15-35. Plaintiff requested the Appeals Council to review the ALJ's decision. AR 250-51. On September 26, 2023, the Appeals Council denied Plaintiff's request for review. AR 1-5. Accordingly, the ALJ's decision became the final agency decision from which Plaintiff now seeks review.

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are:

> (1) Is the claimant presently working in a substantially gainful
> activity? (2) Is the claimant's impairment severe? (3) Does the
> impairment meet or equal one of a list of specific impairments
> described in the regulations? (4) Is the claimant able to perform
> any work that he or she has done in the past? and (5) Are there
> significant numbers of jobs in the national economy that the
> claimant can perform?

*Id.* at 724-25. Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If

the analysis continues beyond step three, the ALJ must evaluate medical and other relevant

evidence to assess and determine the claimant's "residual functional capacity" ("RFC").

The claimant bears the burden of proof at steps one through four. *Bustamante v.*

*Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098

(9th Cir. 1999). The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d

at 1100. At step five, the Commissioner must show that the claimant can perform other work that

exists in significant numbers in the national economy, "taking into consideration the claimant's

residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R.

§§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the

Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform

other work existing in significant numbers in the national economy, the claimant is not disabled.

*See Tackett*, 180 F.3d at 1099; *Bustamante*, 262 F.3d at 954.

## C.  The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

since May 13, 2021. AR 21. At step two, the ALJ determined that Plaintiff had the following

severe impairments: degenerative disc disease of the cervical and lumbar spine, bilateral carpal

tunnel syndrome, osteopenia, fibromyalgia, obesity, post-traumatic stress disorder ("PTSD"),

panic/anxiety disorder, and depressive disorder. *Id.* At step three, the ALJ determined that

Plaintiff does not have an impairment or combination of impairments that meets or medically

equals the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ next determined Plaintiff's RFC, concluding Plaintiff's limitations were as

follows:

> lift/carry 20 pounds occasionally and 10 pounds frequently; sit for
> six hours in an eight hour workday; stand and/or walk for six hours
> in an eight hour workday; occasional climbing of ramps or stairs
> but no climbing of ladders, ropes, or scaffolds; frequent balancing;
> occasional stooping, kneeling, and crouching; no crawling;
> frequent forward, lateral and overhead reaching; frequent handling
> and fingering; must avoid concentrated exposure to vibration; no
> exposure to hazardous machinery or unprotected heights; able to
> understand, remember, and carry out simple tasks while
> maintaining attention and concentration for two hours at a time
> before requiring a regularly scheduled break; low stress work
> defined as having only occasional decision-making and only
> occasional changes in the work setting; occasional interaction with
> coworker[s] and supervisors; and no interaction with the public.

AR 23.

At step four, the ALJ found that Plaintiff has no past relevant work. AR 29. At step five,

the ALJ found that considering Plaintiff's age, education, work experience, and RFC, Plaintiff

could perform jobs that exist in significant numbers in the national economy, such as Marker,

DOT #209.587-034 (84,000 jobs in the national economy); Electronics Worker, DOT #726.687-

010 (169,000 jobs in the national economy); and Garment Sorter, DOT #222.687-014 (40,000

jobs in the national economy). AR 29-30. Thus, the ALJ found that Plaintiff was not disabled

under the Act from May 13, 2021, through the date of the ALJ's decision. AR 30.

## DISCUSSION

Plaintiff argues that the ALJ committed two errors. First, Plaintiff argues that the ALJ failed to identify clear and convincing reasons supported by substantial evidence in the record to reject Plaintiff's symptom testimony. Second, Plaintiff argues that the ALJ erred in finding unpersuasive the medical opinion of Scott Alvord, PsyD. The Court addresses each alleged error in turn.

### A.  Plaintiff's Testimony

#### 1.  Standards

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, 2017 WL 5180304, at *2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's

symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *7-8.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 2.  Analysis

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, satisfying step one of the framework. AR 26. At step two, the ALJ offered the boilerplate statement that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* Because there was no evidence of malingering, the ALJ's decision to discredit Plaintiff's symptom testimony will be upheld only if the ALJ identified clear and convincing reasons to do so. *See Lingenfelter*, 504 F.3d at 1036. The ALJ discounted Plaintiff's symptom testimony because it was contradicted by her treatment history, inconsistent with her daily living activities, and unsupported by the objective medical evidence. Plaintiff argues that these reasons as articulated by the ALJ were not clear and convincing, and also asserts that the ALJ failed to articulate his reasons with the required specificity.

### a.  Specificity

An ALJ must specifically identify what evidence contradicted what testimony. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) (stating that an

ALJ may not vaguely conclude that "a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion" (quoting *Vasquez*, 572 F.3d at 592)). A court "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [a claimant's] pain testimony where . . . the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (emphasis in original) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination" but must "specify which testimony she finds not credible," and the district court may not "comb the administrative record to find specific conflicts." *Brown-Hunter*, 806 F.3d at 489, 494 (quoting *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)); *see also id.* ("[P]roviding a summary of medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." (emphasis in original)); *Treichler*, 775 F.3d at 1103 (rejecting the argument that because the ALJ "set out his RFC and summarized the evidence supporting his determination" the court could infer "that the ALJ rejected [plaintiff's] testimony to the extent it conflicted with that medical evidence"). Instead, the ALJ must "identify the testimony she found not credible" and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter*, 806 F.3d at 494. Failure to do so is legal error. *Id.*

Here, the ALJ summarized Plaintiff's testimony. AR 23-24. The ALJ then found that Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms . . . are inconsistent with clinical observations, diagnostic testing, [Plaintiff's] treatment history, and

[Plaintiff's] activities." AR 26. To support his findings, the ALJ addressed each of Plaintiff's severe impairments and selectively summarized the treatment record to conclude that her allegations were not supported. AR 26-27. "Although the ALJ did provide a relatively detailed overview of [Plaintiff's] medical history, providing a summary of medical evidence is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *See Lambert*, 980 F.3d at 1278 (emphasis in original) (cleaned up).

The ALJ broadly rejected Plaintiff's reports of chronic pain and symptoms related to panic and anxiety disorder as inconsistent or unsupported by the record, but the ALJ never stated which elements of Plaintiff's testimony the ALJ found not credible and which evidence contradicted that testimony. *See id.* at 1277. Indeed, after generally summarizing Plaintiff's testimony, the ALJ did not further mention any specific testimony by Plaintiff or any particular limitation. Nor did the ALJ link any medical evidence to any testimony by Plaintiff when discussing Plaintiff's medical records. As a result, the ALJ's opinion fails properly to evaluate Plaintiff's subjective symptom testimony.

As the Ninth Circuit has repeatedly instructed, without adequate specificity in the ALJ's opinion, the Court cannot evaluate whether the ALJ had specific, clear, and convincing reasons supported by substantial evidence in the record to reject Plaintiff's subjective symptom testimony. The ALJ may not simply summarize Plaintiff's testimony and then summarize the medical record. This is reversible error. Even if the ALJ had identified which portions he found not credible, however, the reasons provided for rejecting Plaintiff's subjective symptom testimony were legally insufficient, as the Court next explains.

### b. Conservative Treatment

The ALJ rejected Plaintiff's symptom testimony in part because she received

conservative treatment.[3] The amount of treatment is "an important indicator of the intensity and

persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). Routine, conservative

treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations

caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an

"aggressive treatment program" permits the inference that symptoms were not "as all-disabling"

as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). If, however,

the claimant has a good reason for not seeking more aggressive treatment, conservative treatment

is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r,*

*Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

The ALJ portrayed cortisone wrist injections as a conservative treatment modality. Courts

generally "decline to consider a claimant's sustained treatment of injections to be conservative."

*John, H. v. O'Malley*, 2024 WL3534430, at *7 (D. Or. July 25, 2024) (quotation marks omitted);

*see also Oldham v. Astrue*, 2010 WL 2850770, at *9 (C.D. Cal. July 19, 2010) (finding that

steroid injections were not a form of conservative treatment when pursued over the course of

---

[3] The Commissioner asserts in the response brief that the ALJ also argued that Plaintiff's treatment was effective. The ALJ mentioned once that "[b]racing was effective at relieving pain" in discussing Plaintiff's carpal tunnel. AR 26. The Court does not construe this passing comment as the ALJ offering improvement with treatment as a reason for discounting Plaintiff's subjective testimony. Even if the ALJ intended this comment to be a reason, it is not supported by substantial evidence in the record. The record citation offered by the ALJ is from September 22, 2022, in which the provider reported that Plaintiff stated the wearing the brace "feels good and helped to relieve her pain." AR 1106. At this visit, however, Plaintiff was following up from a visit one week earlier. She complained of increased pain. She had worn out her brace and was getting fitted for a new brace. She was getting an evaluation for surgery. Her comment that the brace helped in the same visit that she complained of increased pain does not support that the brace improved her symptoms sufficiently to discount her subjective symptom testimony.

several months). In contrast, a single injection is generally considered to be a conservative treatment. *See Woods v. Kijakazi*, 32 F.4th 785, 794 (9th Cir. 2022) (holding that the plaintiff received conservative treatment when she treated her symptoms "mostly with medication alone until she received a left knee injection"); *De Magana v. Comm'r of Soc. Sec.*, 2024 WL 870821, at *15 (E.D. Cal. Feb. 29, 2024) ("The Court agrees . . . that [the plaintiff's] treatment was conservative. [The Plaintiff] received a single Toradol injection.").

The ALJ noted that Plaintiff "received a cortisone injection . . . for carpal tunnel" in April 2021. AR 24 (citing AR 695-97). The Commissioner characterizes in the response brief that "Plaintiff *continued with injections* and bracing" after the April 2021 injection. ECF 14 at 6 (emphasis added) (citing AR 1011, 1092, 1104-05).[4] Although Plaintiff repeatedly discussed having another injection, as noted by the ALJ (*see* AR 26, noting that Plaintiff elected limiting injections and bracing as her treatment modalities), the record does not show that she actually received another injection. Thus, Plaintiff received conservative treatment for her carpal tunnel.

The ALJ also explained that Plaintiff only treated her osteopenia with supplementation and exercise. AR 26. The Court agrees that this was conservative treatment.

With respect to Plaintiff's fibromyalgia, the ALJ simply explained that Plaintiff's "medication dosages were not regularly increased to deal with worsening symptoms." AR 27.

---

[4] The Commissioner's brief refers to multiple injections but does not specify the total number of injections that Plaintiff received during the relevant period. Plaintiff received a cortisone injection in April 2021. AR 695-97. In August 2021, a medical provider noted that Plaintiff reported worsening carpal tunnel symptoms, was "interested in repeat injection," and planned to follow up with "ortho hand." AR 1011. In July 2022, a medical provider referenced a "wrist injection 1 year ago x1 which improved symptoms for a few months" and "scheduling glucocorticoid right wrist injection." AR 1092. In September 2022, Plaintiff was seen for occupational therapy, where a medical provider noted that Plaintiff had been wearing a wrist brace, should continue wearing a wrist brace, and had an appointment "with hand surgery." AR 1102-1106.

That reasoning is insufficient because "[a]ny evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated." *See Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (finding that the ALJ erred in failing to explain why various prescription medicines and injections in the plaintiff's neck, back and hands constituted conservative treatment for fibromyalgia); *see also Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004) ("Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community."). Fibromyalgia is a somewhat unique condition.

In *Cindy F. v. Berryhill*, the Court found that the ALJ erred in discounting the plaintiff's subjective symptom testimony when the ALJ found that the plaintiff's doctors "prescribed pain medications and recommended more activity, but . . . [did] not recommend[] any more significant treatment for her fibromyalgia." 367 F. Supp. 3d 1195, 1210 (D. Or. Feb. 13, 2019) (quotation marks omitted). "Because the ALJ did not specify what 'more aggressive treatment options [were] appropriate or available,' it would be illogical to discredit [the plaintiff] 'for failing to pursue non-conservative treatment options where none exist.'" *Id.* (quoting *Lapierre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010)). Here, it would be similarly illogical to discredit Plaintiff because her doctors did not "regularly" increase the dosages of her medications. The ALJ did not explain what, if any, dosage *would* be consistent with the symptom testimony, nor did he acknowledge that fibromyalgia symptoms tend to "wax and wane." *See* SSR 12-2p, 2012 WL 3104869, at *6. Without more, the ALJ's characterization of Plaintiff's fibromyalgia care as "conservative" is not supported by substantial evidence and does not suffice as a clear and convincing reason to reject her symptom testimony. Further, the ALJ offered no conservative treatment explanation for Plaintiff's degenerative disc disease.

The ALJ also found that Plaintiff received only conservative treatment for mental impairments because she did not receive "significant or repeated emergency or inpatient treatment . . . for psychological or psychiatric distress." AR 27. The Court disagrees that such treatment is required for a mental impairment to be disabling. "Indeed, the Ninth Circuit has criticized the use of lack of treatment to reject mental complaints, both because mental illness is notoriously under-reported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Matthews v. Astrue*, 2012 WL 1144423, at *9 (C.D. Cal. April 4, 2012) (citing *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999)); *see also id.* at *9 ("Claimant does not have to undergo inpatient hospitalization to be disabled."); *Joseph S. v. O'Malley*, 2024 WL 418632, at *14 (S.D. Cal. Feb. 5, 2024) ("The ALJ erred by suggesting or implying that emergency or inpatient psychiatric treatment is required to constitute non-conservative treatment."). Moreover, prescription of psychiatric medications generally is not considered a conservative treatment for a mental impairment. *Drawn v. Berryhill*, 728 F. App'x 637, 642 (9th Cir. 2018) ("[T]he ALJ improperly characterized [the plaintiff's] treatment as 'limited and conservative' given that she was prescribed a number of psychiatric medications); *Powers v. Kijakazi*, 2021 WL 5154115, at *10 (D. Nev. Nov. 4, 2021) (holding that the prescription of psychiatric medications Alprazolam, Bupropion, Clonazepam, Risperidone, Sertraline, and Trazodone was not conservative treatment).

Plaintiff participated in counseling sessions and took multiple prescribed psychiatric medications, including Clonazepam, Trazodone, and Duloxetine, during the relevant period. *See, e.g.*, AR  689-91, 1036, 1047-48, 1057. Plaintiff also took Propranolol for anxiety, and a medical provider increased her Propranolol dose in February 2022 after Plaintiff reported that her anxiety

was getting worse. AR 1047. As such, the ALJ's reliance on Plaintiff's conservative care for her mental impairments was not a clear and convincing reason to discredit Plaintiff's symptom testimony.

Although the ALJ properly found that Plaintiff received conservative treatment as to her bilateral carpal tunnel syndrome and osteopenia, the ALJ failed to provide legitimate reasons in support of his finding that Plaintiff's other severe impairments were treated conservatively. Thus, the ALJ's reliance on conservative treatment is not a clear and convincing reason to reject Plaintiff's testimony and does not support that Plaintiff is able to engage in substantial gainful activity.

### c. Activities of Daily Living

The ALJ rejected Plaintiff's symptom testimony in part because it conflicted with her activities of daily living. Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a); *Orn*, 495 F.3d at 639. "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See Molina*, 674 F.3d at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("One does not need to be utterly incapacitated in order to be disabled." (quotation marks omitted)). The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited

walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan*, 260 F.3d at 1050; *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

With respect to a plaintiff with an impairment of fibromyalgia, daily activities that include household chores such as doing laundry, washing dishes, mopping, and vacuuming do not conflict with pain testimony if the plaintiff had "repeatedly and consistently" noted severe limitations in completing those tasks. *See Revels*, 874 F.3d at 668 (concluding that the plaintiff's report that she could complete household chores, albeit with severe limitations due to her fibromyalgia, did not contradict with her symptom testimony of pain); *see also Stramol-Spirz v. Saul*, 848 F. App'x 715, 717 (9th Cir. 2021) (concluding that the plaintiff's symptom testimony related to fibromyalgia did not conflict with her performance of household chores because she described her limitations in her function report and at the hearing). A plaintiff's ability to complete household chores does conflict with symptom testimony related to fibromyalgia, however, if the plaintiff has not qualified his or her ability to complete those tasks or is "equivocal" in his or her ability to "keep up with" those activities. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (concluding that the ALJ did not err by discounting the plaintiff's symptom testimony related to fibromyalgia because it conflicted with her daily activities, which

included "attending to the needs of her two young children, cooking, housekeeping, laundry, shopping, attending therapy and various other meetings every week"); *see also Roberts v. Berryhill*, 734 F. App'x 489, 491 (9th Cir. 2018) ("A claimant's completion of certain household tasks can provide a valid reason for discounting her inconsistent symptom allegations, even in the specific context of fibromyalgia pain."); *Revels*, 874 F.3d at 668 (distinguishing *Rollins*, 261 F.3d 853).

With respect to Plaintiff's fibromyalgia, the ALJ noted that "[d]espite reports of ongoing widespread pain, . . . [Plaintiff] continued to engage in a wide range of activities. [Plaintiff] sought to increase her exercise and activity level and engaged in regular swimming for a time." AR 27. The record shows, however, that Dr. Rachel Elsasser suggested "swimming and aqua aerobics . . . *for fibromyalgia pain* and cardiovascular health" during an office visit in December 2021. AR 1049-50 (emphasis added). It is illogical to fault a claimant for following her doctor's pain management recommendations. Further, at the hearing, Plaintiff testified that she had stopped swimming due to pain. AR 58.

The ALJ also listed the following examples of "activities which demonstrate significant retained functionality[:]"

> [Plaintiff] completed her personal care, served as the primary caregiver to a teenage child, attended appointments for herself and others regularly, regularly met with and interacted with family, lived amicably with others, went to the park and store, prepared meals, completed household chores, travelled across the country, volunteered, used a computer, used a smartphone, engaged in arts and crafts, regularly exercised, and spent time listening to music, and reading.

AR 27.

As discussed, a claimant's ability to complete household chores does not conflict with pain testimony if the claimant has fibromyalgia and has "repeatedly and consistently" noted

severe limitations in completing those household tasks. *See Revels*, 874 F.3d at 668. Here, Plaintiff testified that "[d]oing household chores is very, very hard on [her] back." AR 49. She does chores "very slow[ly], and . . . take[s] a break between each chore." *Id.* Plaintiff explained that she is "not able to get down on [her] hands and knees to clean" and that it is "hard . . . to bend over and get things up off the floor because of [her] lower back." *Id.* With respect to her personal care, Plaintiff has trouble gripping or holding items such as a blow dryer and showering is "very difficult." AR 51-52, 299.

Plaintiff further testified that she experiences daily panic attacks in public and at home. AR 44-45. She described having panic attacks at the grocery store "many times," during which Plaintiff left behind a full grocery cart and exited the store, eventually returning when she was calm enough to resume shopping. AR 45. In an effort to "face her anxiety," Plaintiff volunteered with the transitional housing authority where she lived twice a week, where the staff allowed her "to take breaks when anxious." AR 693. After four months, Plaintiff stopped volunteering due to anxiety. AR 57. Although Plaintiff and her daughter travelled to New York City to visit Plaintiff's brother on one occasion, Plaintiff described the experience as the "scariest thing [she has] done in [her] life." AR 53. Plaintiff testified that she experienced panic attacks throughout the trip. AR 53-55. She "felt like [the trip] was a once in a lifetime chance" to see her brother for the first time in six years but she could not imagine making the trip again. AR 54.

The relevance of Plaintiff's enjoyment of listening to music is not immediately clear. As discussed, Plaintiff "need not vegetate . . . in order to be eligible for benefits." *See Molina*, 674 F.3d at 1112-13 (quotation marks omitted). Plaintiff reported that she "tries" arts and crafts one time per week. AR 302. Although Plaintiff's reading and her use of a smartphone and computer may potentially conflict with her alleged symptoms relating to her ability to use her hands, the

ALJ did not obtain further information about how extensively she engages in those activities. Her function report simply states that she shops in store or by computer. AR 301. It also states that she reads daily, but not for how long. AR 302. She reports that her activities of arts and crafts and reading are hard on her hands and that she tires easily. AR 302. It is the ALJ's responsibility to develop the record, and the ALJ did not get clarification about these issues at the hearing. Thus, there is insufficient evidence to conclude on a clear and convincing standard that these activities conflict with Plaintiff's claimed limitations.

Plaintiff repeatedly and consistently described severe limitations in her ability to complete many of the activities of daily living identified by the ALJ. At least one of the activities was recommended by a treating physician as a pain management tool. Other activities were undeveloped or appear irrelevant on their face. Accordingly, the ALJ's reliance on Plaintiff's activities of daily living was not a clear and convincing reason to discredit Plaintiff's symptom allegations.

### d. Objective Medical Record

An ALJ may consider the lack of corroborating objective medical evidence as a "relevant factor in determining the severity of the claimant's" alleged symptoms. *Rollins*, 261 F.3d at 857. The ALJ may not, however, "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Robbins*, 466 F.3d at 883; 20 C.F.R. § 416.929(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements").

The parties point to different aspects of the medical record with respect to Plaintiff's fibromyalgia, neck and back pain, and limitation from her psychological conditions. The Court, however, has rejected all other reasons proffered by the ALJ to discount Plaintiff's testimony. Thus, the ALJ may not rely solely on a lack of support in the objective medical evidence.

## B.  Dr. Scott Alvord's Medical Opinion

### 1.  Standards

Plaintiff filed her application for benefits on May 13, 2021. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must evaluate medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. § 416.920c(a)-(b). The new regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods*, 32 F.4th at 792 ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 416.920c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinion. 20 C.F.R. § 416.920c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. 20 C.F.R. § 416.920c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking to factors such as the length of the treatment relationship, the frequency of the claimant's

examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether there is an examining relationship. 20 C.F.R. § 416.920c(c)(3). An ALJ is not, however, required to explain how he or she considered these secondary medical factors, unless he or she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. 20 C.F.R. § 416.920c(b)(2)-(3).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. § 416.920c(b). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Woods*, 32 F.4th at 792 ("Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions is likewise incompatible with the revised regulations. . . . Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." (citation omitted)).

### 2. Analysis

Dr. Alvord conducted a psychodiagnostic evaluation of Plaintiff in September 2022 and based his opinion on a clinical interview, mental status examination, and a review of available medical records. Dr. Alvord's report includes findings regarding Plaintiff's general appearance, mood and affect, psychomotor movements, thought content, stream of mental activity, orientation, memory, attention and concentration, abstract thinking, insight and judgment, fund of general information, and intellectual functioning. AR 1109-10.  Plaintiff's affect was "anxious" and she described her mood as "depressed." AR 1109. She successfully completed some of the tasks in the "Attention/Concentration" category but struggled with others. *Id.* Her

thought processes were "intact" and her speech "was within normal limits." *Id.* Her intellectual ability was "judged to fall in the low average IQ range based on fluid tasks, fund of general information, vocabulary usage, and education/occupation history." AR 1110.

Dr. Alvord diagnosed Plaintiff with PTSD, depressive disorder NOS, and panic disorder without agoraphobia. AR 1110. Dr. Alvord assessed that Plaintiff would have "moderate to marked difficulty understanding, carrying out, and remembering instructions (both complex and one-two step)"; "moderate difficulty sustaining concentration and persisting in work related activity at a reasonable pace"; "mild to moderate difficulty maintain[ing] effective social interaction on a consistent and independent basis with supervisors, co-workers, and in the public"; and "moderate difficulty dealing with normal pressures in a competitive work setting." AR 1110.

The ALJ found Dr. Alvord's opinion unpersuasive because it "is based on a single one time examination and evaluation of the claimant and the marked to moderate limitations indicated are not consistent with Dr. Alvord's own observations which showed claimant to have intact memory, attention, concentration, abstract reasoning, fund of knowledge, and average intellect." AR 28. The ALJ explained that the degree of limitation alleged in the report "is also not consistent with clinical observations throughout the treatment record which were generally unremarkable . . . or [Plaintiff's] performance of a wide range of activities." *Id.*

Plaintiff argues that the ALJ erred in finding unpersuasive the medical opinion of Dr. Alvord because his clinical findings *do* support the "marked to moderate" limitations noted in his report. Only one of Plaintiff's citations to the record in support of this argument, however, refers to Dr. Alvord's examination. Plaintiff points out that "Dr. Alvord observed an anxious affect and some difficulty in attention and concentration during testing," but the simple fact that

a treating provider's report notes *some* impairments does not support that an ALJ erred in finding that those impairments do not support the degree of limitation indicated in the medical opinion.

The ALJ's explanation that Dr. Alvord's opinion is unpersuasive because it is inconsistent with his own clinical findings is a reason supported by substantial evidence. The ALJ identified several specific findings from Dr. Alvord's examination that conflicted with the "marked to moderate limitations indicated." AR 28. Thus, the ALJ properly analyzed the supportability of the medical opinion. *See* 20 C.F.R. § 416.920c(c)(1). Plaintiff also states that an ALJ may not reject a medical opinion merely because it is based on a single examination; but here, the ALJ did not err in considering, as *a factor*, the length of the treatment relationship. *See* 20 C.F.R. § 416.920c(c)(3)(i) ("The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s).").

With regard to consistency, the ALJ's finding that Dr. Alvord's opinion is inconsistent with clinical observations throughout the treatment record is a reason supported by substantial evidence. For example, the record shows that some treating providers described Plaintiff's cognition as "normal" or "grossly intact," her memory as "normal," and her thought process as "linear, logical and goal-oriented," although she "at times lost [her] train of thought." AR 701, 730, 799. These clinical observations do not support that Plaintiff would have "moderate to marked difficulty understanding, carrying out, and remembering instructions" as indicated by Dr. Alvord's report. Plaintiff points to other medical records that may support Dr. Alvord's conclusions. But even if Plaintiff's interpretation is a rational one, the ALJ's interpretation also is rational. When there are two competing rational interpretations of the evidence, the Court follows the ALJ's interpretation. *See Burch*, 400 F.3d at 679. Although the Court rejects the

ALJ's reliance on Plaintiff's daily activities to discount Dr. Alvord's opinion for the same

reasons the Court rejected Plaintiff's activities to discount Plaintiff's testimony, the ALJ

provided other valid reasons to discount Dr. Alvord's opinion. Thus, the ALJ did not err in

finding unpersuasive Dr. Alvord's medical opinion.

## C. Remedy

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to

remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246

F.3d 1195, 1210 (9th Cir. 2001). Although a court should generally remand to the agency for

additional investigation or explanation, a court has discretion to remand for immediate payment

of benefits. *Treichler*, 775 F.3d at 1099. The issue turns on the utility of further proceedings. A

court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence

that has been improperly rejected by the ALJ to determine if a claimant is disabled under the

Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th

Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this

Court. *Garrison*, 759 F.3d at 999. A court first determines whether the ALJ made a legal error

and then reviews the record as a whole to determine whether the record is fully developed, the

record is free from conflicts and ambiguities, and there is any useful purpose in further

proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has

been fully developed and there are no outstanding issues left to be resolved does the district court

consider whether the ALJ would be required to find the claimant disabled on remand if the

improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its

discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however,

and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

      The ALJ committed harmful error in evaluating Plaintiff's testimony. The ALJ's boilerplate statement that Plaintiff's testimony is "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision," in conjunction with the ALJ's failure to identify which portions of Plaintiff's testimony the ALJ discounted, prevents the Court from meaningfully determining whether the ALJ's conclusions were clear and convincing reasons supported by substantial evidence. Further, even if the Court attempts to discern the ALJ's reasoning, the reasons provided were not clear and convincing. On this record, the Court cannot conclude that further proceedings would serve no useful purpose. There are ambiguities regarding Plaintiff's limitations and conflicts between Plaintiff's testimony and other evidence in the record. The ALJ should have the opportunity to properly evaluate Plaintiff's symptom allegations and resolve any ambiguities concerning Plaintiff's physical and mental limitations, including reformulating an appropriate RFC if necessary.

## CONCLUSION

      The Court REVERSES the Commissioner's decision that Plaintiff was not disabled and REMANDS for further proceedings consistent with this Opinion and Order.

      **IT IS SO ORDERED**.

      DATED this 10th day of March, 2025.

                                /s/ *Michael H. Simon*
                                Michael H. Simon
                                United States District Judge